[No. F015469. Fifth Dist. Sept. 28, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMY DARREL EARLS et al., Defendants and Appellants.

**COUNSEL**

Jonathan M. Yost for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, W. Scott Thorpe and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARTIN, Acting P. J.**—Defendants Jimmy Darrel Earls and Richard Wayne Smart were charged as follows: count I— sale of cocaine on March 28, 1988 (Health & Saf. Code, § 11352, subd. (a)) (both defendants); count II—sale of methamphetamine on April 12, 1988 (Health & Saf. Code, § 11379) (defendant Earls only); count III—sale of methamphetamine on April 19, 1988 (Health & Saf. Code, § 11379) (defendant Earls only); count IV—possession of cocaine for sale on May 12, 1988 (Health & Saf. Code, § 11351) (defendant Earls only); count V—possession of methamphetamine for sale on May 12, 1988 (Health & Saf. Code, § 11378) (both defendants); count VI—conspiracy to sell cocaine and methamphetamine between March 1 and May 12, 1988 (Health & Saf. Code, §§ 11352, 11379; Pen. Code,

§ 182, subd. 1)[1] (both defendants); and count VII—maintenance of a place for sale or use of cocaine between March 1 and May 12, 1988 (Health & Saf. Code, § 11366) (defendant Smart only). As to count I, the district attorney specially alleged defendants sold a substance containing 28.5 grams or more of cocaine or a substance containing cocaine and weighing 57 grams or more (§ 1203.073, subd. (b)(1)). As to count II, the district attorney specially alleged defendant Earls sold a substance containing 28.5 grams or more of methamphetamine or a substance containing methamphetamine and weighing 57 grams or more (§ 1203.073, subd. (b)(2)).

On March 13, 1990, defendants filed motions in superior court to set aside the information (§ 995) and suppress evidence (§ 1538.5). The district attorney objected on the ground the municipal court had conducted a suppression hearing and there could be no hearing de novo in superior court. On July 11, 1990, the court denied defendants' motions.

On September 6, 1990, defendants filed a petition for writ of mandate with this court (No. F014543) to compel the superior court to conduct a section 1538.5 hearing de novo. On October 17, 1990, defendants requested permission to withdraw petition for writ stating: "Said [W]rit of Mandate has become moot since petitioners have elected to plead in the matter." On October 18, 1990, we denied the petition for writ of mandate "[p]ursuant to the request of petitioners." Thereafter, defendant Earls pleaded guilty to counts I through IV and admitted the special allegations in counts I and II in exchange for dismissal of the remaining counts and imposition of a four-year sentence in state prison. Defendant Smart pleaded guilty to count V in exchange for dismissal of the remaining counts and imposition of a two-year sentence in state prison.

At the sentencing hearing, the court denied defendant Earls probation and sentenced him to the middle term of four years on count I and concurrent three-year middle terms on counts II through IV. The court also denied defendant Smart probation and sentenced him to a two-year middle term on count V. Defendants each filed a timely notice of appeal.

FACTS

On March 28, 1988, Agent Gary West of the California Department of Justice Bureau of Narcotic Enforcement (BNE) contacted defendant Earls at 541 Doyle Street in Porterville. West arranged to purchase two ounces of cocaine from Earls for $1,500. Earls entered a "cargo container" on the

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

property and another adult male followed him into that container. West completed the buy from Earls at a nearby market. Earls identified the source of the cocaine as "Richard."

On April 12, 1988, West and a confidential informant, Alfred Coker, telephoned Earls at the Doyle Street residence and arranged to purchase five ounces of methamphetamine. West met Earls at the market and made the purchase for $3,750. West asked about the cooking process "Richard" was using, and Earls responded, "I don't know. I just deliver the stuff."

On April 19, 1988, West again went to the Doyle Street residence and contacted Earls. The pair then went to a residence at 540 Page Street in Porterville, where Earls gave West samples in two baggies. One baggie contained a brown powder and the other contained a white powder. Based on the earlier purchase of brown methamphetamine, West said the product was inferior. Earls represented the white powder was "ass kicking and good stuff." Earls left to make a telephone call, then returned and said his partner wanted $9,000 for a pound of the brown powder and $12,000 for a pound of the white powder.

Informant Coker had originally introduced West to Earls and was present at all three transactions. Coker testified defendant Earls lived on Page Street and defendant Smart lived at 541 Doyle Street. Coker described the transactions on March 28 and April 12 and 19. Prior to the March 28 sale at the market, he saw Earls and then Smart enter the cargo container at the Doyle Street residence. He also spoke with Smart on the telephone prior to the April 12 transaction.

Department of Justice criminalist Jerome Massetti tested the substances submitted by West. The powder purchased on March 28 contained cocaine and weighed 48.65 grams. The powder purchased on April 12 contained methamphetamine and weighed 138.39 grams. The "samples" provided on April 19 contained methamphetamine and weighed 1.96 and 2.99 grams respectively.

On May 12, 1988, Tulare Police Detective Robert Barcello went to 540 Page Street with officers from the Porterville Police Department, Tulare County Sheriff's Department, and BNE. Defendant Earls arrived at the residence in a truck and exited the truck with a cloth bank bag in his hand. Barcello seized the bank bag and felt what he believed to be a handgun inside the bag. He opened the bag and found a stolen handgun and several plastic packets containing substances. Barcello also seized over $2,400 from Earls's person.

At the same time, BNE Special Agent Laura Montague served and executed a search warrant at 540 Page Street. She received the bank bag that Detective Barcello seized from Earls. The substances in the plastic packets tested positive for cocaine and methamphetamine. She also found a set of plastic scales in the bag. In the course of the search, Montague seized cocaine, methamphetamine, and a cutting agent from various locations in the house. California Department of Justice criminalist Steven Patton tested these substances and determined there were 7.3 grams of a material containing cocaine, 192.1 grams of a material containing methamphetamine, and 1475.6 grams of a material containing a cutting agent. Montague also seized records of apparent drug sales, a bag full of syringes, a police scanner, scales, and indicia that defendant Earls occupied the residence.

Also on May 12, 1988, Porterville Police Detective Ernie Garay served and executed a search warrant at 541 Doyle Street, the site of a large mobilehome. Defendant Smart was present in the residence and officers found some marijuana, pay-and-owe sheets, and a wallet on or near his person. The wallet contained $4,159 and Smart's driver's license. The license showed his residence as 541 Doyle Street. Garay searched the mobilehome and seized a plastic vial containing white powder, a sifter with white powder residue, a ledger and other documents apparently recording drug transactions, a handgun, 31 plastic vials commonly used to package "a certain product," scales, and indicia that Smart occupied the residence. The substance in the vial contained methamphetamine and weighed .14 grams. The residue on the sifter also contained methamphetamine. Officers found $35,000 in a floor safe. Agent Montague determined $3,550 of this money was used by Agent West to purchase drugs from Earls on an earlier occasion.

## DISCUSSION

The People contend defendants' notice of appeal is deficient and the appeal is not cognizable.

When retained defense counsel filed the notice of appeal, section 1237.5 stated in relevant part:

"No appeal shall be taken by a defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where the defendant has filed as part of the notice of appeal a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings." (Stats. 1988, ch. 851, § 1, p. 2763.)

California Rules of Court, rule 31(d) further stated:

"If a judgment of conviction is entered upon a plea of guilty or nolo contendere, the defendant shall file with the notice of appeal the statement required by section 1237.5 of the Penal Code. [¶] If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere is based solely upon grounds (1) occurring after entry of the plea which do not challenge its validity or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code, the provisions of section 1237.5 of the Penal Code requiring a statement by the defendant are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds."

The notice of appeal in the instant case simply stated:

"To the Clerk of the Superior Court, Tulare County: [¶] PLEASE TAKE NOTICE that defendants, JIMMY DARREL EARLS and RICHARD WAYNE SMART, herewith appeal from the judgement [*sic*] and from the sentences in this case, their pleas to which resulted from reversable [*sic*] errors occurring in the Superior and Municipal Courts of this County. Sentence was pronounced on January 3, 1991 by The Honorable Richard [*sic*] C. Van Auken."

As is apparent, defendants' notice failed to comply with section 1237.5. It does not include "a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings."

In *People* v. *Breckenridge* (1992) 5 Cal.App.4th 1096 [8 Cal.Rptr.2d 1] defendant appealed from a judgment entered after he pleaded guilty to lewd conduct with a child and admitted a 1976 prior serious felony conviction for a similar offense. (§§ 288, subd. (a), 667, subd. (a), and 1237.5). In his notice of appeal, defendant stated he was " 'improperly sentenced' " to a consecutive term for a prior serious felony conviction. This claim implicated the validity of his admission of the prior. In his opening brief on appeal, defendant explicitly claimed his admission was invalid. At the time defendant filed his notice of appeal, section 1237.5 required a written statement showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. However, defendant's notice of appeal did not include the required statement executed under oath or penalty of perjury. The People argued the appeal should be dismissed because defendant did not comply with the applicable provisions of section 1237.5. The Sixth District Court of Appeal agreed and dismissed the appeal.

The purpose of section 1237.5 is to discourage and weed out frivolous or vexatious appeals following guilty pleas. When a defendant fails to satisfy the requirements of section 1237.5 and the record discloses no justification therefor, the appeal is not operative and the appropriate disposition is dismissal. The Sixth District noted some courts had questioned the effectiveness of section 1237.5, particularly the version applicable in *Breckenridge*. (See *People* v. *Guzman* (1991) 226 Cal.App.3d 1060, 1064-1065, fn. 3 [277 Cal.Rptr. 286].) These courts first acknowledged a defendant's noncompliance with section 1237.5 and then used one device or another to circumvent the statute and reach the merits of the appeal in the interest of judicial economy. (*People* v. *Young* (1991) 228 Cal.App.3d 171, 178-179 [278 Cal-.Rptr. 784]; *People* v. *Ballard* (1985) 174 Cal.App.3d 982, 985-989 [220 Cal.Rptr. 323].) However, the *Breckenridge* court concluded it was inappropriate and unwise to let expediency outweigh the legislative command of section 1237.5. That command is clear—compliance with section 1237.5 is a condition precedent to an appellate attack on the validity of a guilty plea. To resolve an appeal simply because it has been filed will only encourage further noncompliance with section 1237.5. Under the circumstances, the court held defendant's failure to comply with the statute precluded appellate review.

In the *Breckenridge* case, defendant attempted to preserve his appellate rights by moving for relief from the consequences of his failure to comply. To obtain relief, defendant had to make an affirmative showing of good cause (Cal. Rules of Court, rule 45(e)). However, defendant provided no explanation for his default. Moreover, he did not suggest it was caused by the conduct, negligence, or dereliction of someone other than himself. Rather, he relied on the policy favoring resolution of appeals on their merits, noted the appeal was fully briefed, and argued that granting relief could not prejudice the People. The Sixth District declined to treat the deficiencies in the notice of appeal as "insignificant technicalities" and refused to overlook them so as to reach the merits of the appeal.

Here, on February 27, 1991, defendants' retained counsel filed a notice of appeal which failed to comply with the requirements of section 1237.5. However, California Rules of Court, rule 31(d) provides section 1237.5 is inapplicable where the appeal is based "solely upon grounds (1) occurring after entry of the plea which do not challenge its validity or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code . . . ." Defendants appealed from the judgments and sentences "their pleas to which resulted from reversable [*sic*] errors occurring in the Superior and Municipal Courts of this County." This language is both ambiguous and confusing, and we cannot determine from

the face of the notice whether or not the appeal meets the requirements of rule 31(d). ■ Generally speaking, a notice of appeal shall be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 1(a); *Smith* v. *Ostly* (1959) 53 Cal.2d 262, 265 [1 Cal.Rptr. 340, 347 P.2d 684].) Given this rule of construction, we may look to defendants' opening brief as an aid in interpreting their notice of appeal. That opening brief raises three contentions: (1) whether the search and seizure violated defendants' constitutional rights because hearsay from a third party informant was cited in the search warrant affidavit; (2) whether the lower court violated defendants' constitutional right to confront their accusers when police lost contact with the third party informant; and (3) whether the good faith exception to the exclusionary rule was applicable in these circumstances.

■ In view of these contentions, we may liberally construe the appeal to be based solely on grounds involving a search and seizure. However, that fact alone does not make the instant appeal operative. Although the requirements of section 1237.5 are inapplicable, the appeal is not operative unless the notice states it is based upon such grounds. (Cal. Rules of Court, rule 31(d).) The instant notice of appeal wholly fails to satisfy this aspect of California Rules of Court, rule 31(d). In *People* v. *Ballard, supra,* 174 Cal.App.3d 982, defendant pleaded guilty to four felonies. He appealed, but failed to obtain the required certificate of probable cause under the then-existing version of section 1237.5. Moreover, his handwritten and typed notices of appeal did not state any grounds on which the defendant based his appeal. The First District Court of Appeal ruled the appeal was not operative because defendant (1) did not obtain a certificate of probable cause from the trial court, and (2) did not state any ground on which he purported to base his appeal in the notice of appeal. The court held the appropriate disposition for such an inoperative appeal is dismissal:

"When an appellate court considers an appeal on its merits in spite of the appellant's noncompliance with section 1237.5 and rule 31(d), it arrogates to itself the screening which should have taken place at the county level. The better and, we think, correct response at the appellate court level, to an appellant's disregard of the requirements of section 1237.5 and rule 31(d) is a simple refusal to discuss the merits of the appellant's contentions." (174 Cal.App.3d at p. 988.)

In *People* v. *Knauer* (1988) 206 Cal.App.3d 1124 [253 Cal.Rptr. 910], defendant pleaded guilty in municipal court to maintaining a place for the sale of heroin. Defendant justifiably relied on his attorney to initiate the filing of a notice of appeal. Counsel failed to do so and the First District Court of Appeal granted defendant's petition for habeas corpus to perfect a

timely notice of appeal. The court applied the doctrine of constructive filing and deemed the defendant's notice of appeal timely filed. The notice of appeal raised the ground of an erroneous refusal to permit defendant to withdraw his guilty plea. Section 1237.5 required defendant to obtain a certificate of probable cause. However, defendant raised a different issue on appeal, i.e., that the trial court gave inadequate reasons for denying probation and imposing a prison sentence. Section 1237.5 did not require defendant to obtain a certificate of probable cause to raise the claim of sentencing error. However, California Rules of Court, rule 31(d) provided "the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds." Defendant Knauer's notice of appeal did specify a ground, but it was not the sentencing issue asserted on appeal. The question arose whether the First District could properly hear defendant's appeal.

The First District reexamined the broad language in *People* v. *Ballard, supra*, 174 Cal.App.3d 982 and concluded Knauer's appeal was cognizable. Section 1237.5 establishes the jurisdictional limits of a reviewing court over appeals after a guilty plea. California Rules of Court, rule 31(d) implements that statutory requirement. When originally promulgated in 1965, rule 31(d) declared a notice of appeal "shall not be operative" unless a certificate of probable cause is filed within specified time limits. The final paragraph of the rule provided: "The time for preparing, certifying and filing the record on appeal or for filing an agreed statement shall commence to run when the appeal becomes operative." This language signified the operative status of the appeal directly relates to the preparation of the record. The rule was apparently designed to instruct superior court clerks not to prepare the record on improper appeals that would surely be dismissed by the Court of Appeal. In 1970, the Judicial Council added the second paragraph to California Rules of Court, rule 31(d). That paragraph provides if a defendant appealed upon postplea grounds which do not challenge the plea itself, the requirements of section 1237.5 are inapplicable. However, "the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds."

The First District held this language is similarly directed to the superior court clerks. It reasoned that California Rules of Court, rule 31(d) does no more than establish a screening mechanism for the aid and benefit of superior court clerks regarding their obligation to prepare an appellate record. The clerks are instructed that no record need be prepared unless the defendant who appeals following a guilty plea has complied with the requirements of section 1237.5 or has filed a notice of appeal clearly reflecting that the statutory statement and certificate are unnecessary. The specification of appropriate grounds in the notice of appeal is not a jurisdictional requirement. Thus, if the clerk were to process the appeal even in the absence of

such specification, the defective notice of appeal would not bar appellate review. Defendant Knauer's failure to specify the requisite grounds—which in theory would indefinitely suspend preparation of the record—was not a jurisdictional defect and did not otherwise preclude consideration of the merits of the appeal.

Although the First District has apparently "reversed course" in this area, we decline to follow the *Knauer* opinion. The purpose of section 1237.5 is to avoid frivolous or vexatious appeals. (*People* v. *Young, supra,* 228 Cal.App.3d 171, 179.) Section 1237.5 establishes the jurisdictional limits of this court over appeals after a guilty plea and California Rules of Court, rule 31(d) implements that statutory requirement. (See *People* v. *Laudermilk* (1967) 67 Cal.2d 272, 281, fn. 8 [61 Cal.Rptr. 644, 431 P.2d 228], cert. den. 393 U.S. 861 [21 L.Ed.2d 128, 89 S.Ct. 139].) Case law has long held "[I]f . . . section 1237.5 is to retain any viability in the statutory scheme, appellate courts cannot engage in a wholesale disregard of its procedural requirements." (*People* v. *Musante* (1980) 102 Cal.App.3d 156, 158 [162 Cal.Rptr. 158], cert. den. 449 U.S. 932 [66 L.Ed.2d 157, 101 S.Ct. 332].) To improve the administration of justice, the California Constitution requires the Judicial Council to adopt rules for court administration, practice and procedure "not inconsistent with statute." (Cal. Const., art. VI, § 6.) Section 1237.5 clearly stated: "No appeal shall be taken . . . except where the defendant has filed as part of the notice of appeal a written statement . . . showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings." California Rules of Court, rule 31(d) created two exceptions to this requirement but nevertheless mandated "the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds [i.e., grounds which come within the exceptions]." The *Knauer* court's construction of California Rules of Court, rule 31(d) nullifies the viability of the statutory scheme by ignoring its procedural requirements.

As previously noted, defendants' retained counsel filed a notice of appeal which did not comply with the requirements of section 1237.5 or California Rules of Court, rule 31(d). Over 18 months have passed since the date of filing and the defendants and their counsel have not attempted to amend the notice of appeal or sought other relief. The purpose of section 1237.5 and, by reasonable inference, its implementing rule of court, is to discourage and weed out frivolous or vexatious appeals following guilty pleas. When a defendant fails to satisfy the requirements of that section and rule and the record discloses no justification for that failure, the appeal is not operative and the appropriate disposition is dismissal. This is particularly appropriate where, as in the instant case, the defendants raised the appellate issues on a

prior writ petition and then voluntarily withdrew that petition to gain the benefits of a plea bargain.

Accordingly, the appeal is dismissed.[2]

Buckley, J., and Franson, J.,* concurred.

---

[2]In view of this conclusion, we do not address defendants' contention that the trial court erred in denying defendants' motions to quash the search warrant and suppress evidence. We merely note that were we to reach these issues on the merits we would reject defendants' arguments and uphold the trial court's denial of defendants' motions.

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.